Aloha everyone. We're pleased to be sitting here at your beautiful campus, and I also like to welcome my husband. He's somewhere out there. You know, there he is. He looks like one of the students. At least in attire. The cases will be called in the order listed on the docket. The first case on calendar for argument is United States v. Simmons. Will counsel for appellant please approach and proceed? Good morning, your honor. May it please the court. My name is Peter Wolfe. I represent Mr. Simmons in this appeal. The case is about whether the district court properly found Mr. Simmons to be a career criminal under the sentencing guidelines. And that in turn depends upon the application of the discamps analysis on categorical analysis of a crime of violence versus the analysis the district court made because at the time Mr. Simmons sentencing the district court was operating under the ninth circuit's regime, which He trusted us and we led him astray. Well, that's true. So that case Montez de Aca was abrogated as I think Justice Kagan said in discamps. So what Seabright did is exactly what you can't do, which was use the modified categorical analysis to figure out factually what did Mr. Simmons do and then decide whether that is a generic crime of violence under the residual clause. So but if we reviewed this de novo, does it matter whether or not he took the wrong approach so long as he came to the correct result? It wouldn't matter, but he didn't come to the correct result. And the reason we know that is because I mean, first of all, he So he did something right. Well, he did a lot of things right at the time based on the laws. Even under the laws that exist now, that was correct. That part was correct. That's always been correct. So the question is, then, is escape in the second degree and one question is, is it a divisible statute? If it's not a divisible statute, Simmons wins because it's clearly overbroad in terms of what kinds of escapes it criminalizes. But it is a divisible statute. Well, both sides have said so, although actually You don't agree on exactly how it's divided. Right. But it's divisible. We agree that it's divisible, although a case we mentioned in our reply brief, Kling, from the White Supreme Court, at least suggests that maybe we're wrong about that, but Well, assuming you're right about that, then the modified categorical approach can permissibly be applied. The modified categorical approach can be applied to determine what crime it was that Mr. Simmons committed, if any of the divided crimes are themselves narrow enough to qualify as generic crimes of violence. And the reason none of them do is because of the Hawaii Supreme Court's definition of custody, as articulated in the case of State v. Smith, which remarkably This case is decided by Smith, in my opinion, and it's a case that we cited liberally in our opening brief and reply brief. It's a case that Judge Seabright referred to, but it's a case the government never discussed in its answering brief for reasons that are not at all obvious to me. You can expect in about seven minutes we'll be hearing something from the government about that. I hope so. So Smith is a case decided a long time ago, as these things go, and in Smith, what happened was the defendant in that case was on a furlough from the Hawaii Youth Correctional Facility, and he didn't come back on time. That was the crime that was charged, and he was charged with escaping from custody. And he argued that he wasn't in custody because he'd been given a furlough pass and he wasn't in the custody of any particular public servant. And since he'd been given a furlough, I guess he wasn't, in his view, in the custody of the Hawaii Youth Correctional Facility. But the Hawaii Supreme Court said he was just plain wrong about that, and the language that I think is important is when the Hawaii Supreme Court said in Smith, it would seem to us... What page are you on, Mr. Walker? We're on page of the Pacific Report, our second series, page 342. 342? 342 of 583 Pacific Report, second. Okay, go ahead. So I'm at the paragraph that starts in the left column about a third of the way down. The court said it would seem to us that if the legislature meant to qualify the word custody by the restrictive term actual, so that custody would mean only actual custody, it could have very easily defined it by making such a requirement. So how does that help him? It helps because if escape from custody is a crime that is overbroad in that it sweeps within its conduct, it would be generically a crime of violence under chambers. But also sweeps within its conduct, it wouldn't be a generic crime of violence, such as walkaway escapes, failures to come back that render you nevertheless to have committed the crime of escape. Then you have a statute which is not generically a crime of violence. If it's not generically a crime of violence, then you can't apply it to find that that's the second conviction that operates to render Mr. Simmons a career offender. So to back up, Mr. Wolf, you say this statute is divisible, the crime of conviction. But the way you would divide it is different from the way the government divides it. And the way you divide it is one of the, I'll call it the sub-crimes, is escape from custody. Is that right? One is escape from a correctional facility, one is escape from a detention facility, and one is escape from custody. And those are the three ways in which you contend that statute is divisible. Right. The government says... Then, just a minute now, following your position. So, and your position is that your client was convicted of escape from custody? Right. Without, and we can't look behind that. I mean, in terms of what actually happened. Right. Our only job is to construe whether escape from custody as defined by Hawaii law is broader than, let's say, a generic crime of violence. Right. And your case is that it is broader. It is broader. Because it encompasses what? It encompasses escapes that amount to failing to come back from a furlough, as articulated in Smith, or escapes that involve walking away and don't involve escape from actual custody. Right. And so that is what Chambers, which was an ACCA case, but the analysis is the same with career offender and ACCA cases. Chambers said to have an escape crime that is a generic crime of violence, you can't include within that escape, the state can't include within that escape, escapes that involve failing to come back or walking away on furlough or walking away when you're legally in custody, but no one actually has you in their actual physical custody. And the crime under Hawaii law can't be divided any narrower than that, even though the government contends that it can, but there's no support in Hawaii law for that proposition. And since they didn't even examine what Hawaii law says about custody, I don't see any reason why the government's analysis of further division should be entitled to any respect at all, because the Hawaii Supreme Court has said this escape in the second degree from custody is a rather broad offense. And we know that because the facts of Smith. And we know it from the one other case that we cited in our reply brief, which involved a person who was in a patrol car. The officer stopped to interview some witnesses, and he got out of the car and walked away. So that confirms that the escape in the second degree under Hawaii law is broader than the generic crime articulated in chambers as having to meet these generic elements to count as a crime of violence. So I think I see that there's a minute and 24 left. Did you want to save some time for rebuttal? I would, yes, Your Honor. Thank you, Counsel. We'll hear from the government. May it please the Court, Jonathan Lew for the United States. Your Honors, it is the government's position that this case was correctly decided but for the wrong reason. What you have is a prior conviction of the defendant for escape in the second degree. As the government argued in its brief, that offense requires proving the following elements, that the defendant escaped intentionally and that he escaped from either a correctional facility, a detention facility, or from custody. And the defendant concedes, as he must, that this is a divisible statute, and therefore the modified categorical approach is appropriate and was properly applied by the district court in this case. But according to Mr. Wolf, it's divisible only into the three sub-crimes, right?  That's the only way the statute is divisible. I mean, that's his position. You don't agree with that? I don't agree with that, Your Honor, and here's why. First of all, is it at least divisible that far, the escape? Oh, it is certainly divisible at least that far. All right. And which one of those three, according to the state court records, was this defendant convicted of? He was convicted of an escape from custody. Okay, so he was, all right. So you agree with that? Yes. Now your position is what? He's still? Okay, so under Hawaii law, with respect to custody, custody means restraint by a public servant pursuant to arrest, restraint by a public servant pursuant to a court order, or restraint by a public servant pursuant to detention. Now if Mr. Wolf is going to argue that Rendon limits the analysis solely to the level of determining that this was an escape from custody and no further, then Mr. Wolf has to concede that for this defendant to be convicted, the jury need not have been unanimous as to whether he escaped from restraint by a public servant, restraint by a public servant pursuant to arrest, restraint by a public servant pursuant to a court order, or restraint by a public servant pursuant to detention. Do we have to make that analysis under the modified categorical approach? I thought your argument was going to be that the documents from the state court confirmed that he was convicted of an escape from custody due to the plea colloquy documents. Well, that's exactly right, Your Honor. But what Mr. Wolf is arguing, as I understand it, is that the court can't even consider that because custody is not divisible into further sub-elements. Well, first it's true under this camp, we can't use the documents to decide what the facts of the particular case were. We're stuck with the generic conviction. You might be able to slice down the crime of conviction, and that's what you're trying to do. But the fact that we may know that he escaped under particular circumstances, that may have been the basis for the district court's opinion and relying upon our prior opinion, but now the Supreme Court's told us otherwise. And you're not disputing that, are you? No, Your Honor. But what I'm trying to do is apply the test in Rendon, which says that if that fact requires a unanimous finding by the jury, it must therefore be an element. Well, what requires the unanimous finding by the jury that, indeed I thought you told us it didn't require a unanimous finding by the jury, that it was custody by virtue of pursuant to arrest as opposed to detention? Oh, no, my argument is that custody is further divisible, and therefore you have to... But the jury wasn't asked to divide it any further. They didn't have to make the judgment. That's correct, Your Honor. There was a plea in this case, and so there was no finding, but there was an admission... But the jury would never have been asked, would they? Would they have been asked to find that it was pursuant to arrest as opposed to pursuant to detention? I believe they would be, Your Honor, and that's why I cited State v. Nicola in my brief, which was, again, an escaped second conviction, where on appeal the argument was whether the defendant had escaped from custody, that being restrained by a public servant pursuant to arrest. So if that's the only evidence that's presented to the jury, the jury would have necessarily have had to find that in order to convict. That's correct, Your Honor, and that's really the sticking point, or my sticking point, which is there was no other way for this offense to have been committed. Had Mr. Simmons' case been submitted, had been tried, and submitted to a jury, the only way that jury would have been able to convict him is if they found that he escaped from custody, constituting restraint by a public servant pursuant to arrest. If he'd been placed under arrest, he'd been placed in the back of a police car. Suppose he'd asked the policeman, say, okay, you've got me, but I need to go to the bathroom and pack up some stuff, and the policeman's feeling sympathetic and doesn't think this guy's particularly dangerous. He says, okay, I'll wait for you here, and then the guy doesn't appear. He takes off. That, I could see as a violation. It would be an escape, but it would be an escape of a more passive kind, more analogous to what the Supreme Court talked about in Smith and the furlough case, or arguably more passive, not necessarily a kind of action that, under the U.S. Supreme Court's decision in chambers, would be one tending to produce violence. So even if I got down to your last subdivision, I'm not sure we have generically a crime of violence. Couldn't you have a passive-type escape in an arrest scenario? Not based on the kinds of risk and danger recognized by the legislature and the courts when this escape second statute was enacted. Well, you're going to have to deal with Smith at some point. But Smith appears to tell us you can have a passive escape, a nonviolent escape. That's correct. From custody. From custody. From custody. Now, Smith involved the detention scenario of somebody given a furlough, a formal release from custody with the expectation that you return. And the factual scenario I just came up with is a little different. The policeman's saying, okay, I'll wait for you here, and I'm making that up on the fly. But it seems to me if that goes to the Supreme Court, the Supreme Court's probably going to call that escape as well, wouldn't it? Applying Smith? Yes. And if they apply Smith to that scenario, that sounds to me like the kind of nonviolent escape from custody that the U.S. Supreme Court in chambers said wouldn't fit here because it was not so inherently connected or pretending to cause violence. And that is why we conceded, as we had to, that categorically escape second under Hawaii state law could not be. But you're stopped there. Because the modified categorical approach doesn't anymore let us get to the facts. It just means we can get to these subdivisions. But once you get to your smallest subdivision, which you have by going to custody, and then in the version the defendant resists going on to arrest, you can't divide that any further. And if somebody could be convicted of that in a way that's nonviolent, it seems to me that's the end of the inquiry for the modified categorical approach. Am I wrong about that? And what this camps prevents us from doing is what we've done in the past and what the district court did here, looking at the facts of the particular case. And the categorical approach may be artificial in that respect, but it is plainly the law. So that's the problem I have with your position. There has to be a difference, though, between the modified categorical and the categorical. And it seems that that position sort of blends the two so that the modified categorical becomes, in effect, another categorical approach. Well, I think that's what was the result of the camps. I mean, because once you determine under which set of elements a defendant was convicted, then you go back to the categorical approach to see whether or not those elements in the ordinary case present a serious risk of physical injury to another, and whether that is of a kind or degree similar to one of the enumerated offenses. I mean, I agree that that is now the analysis. All of our hands are tied in that sense. We cannot look to the particular facts of the case. And is there any other way that you can think of that gets around the fact that even divided to custody and maybe even to arrest under custody, there's a nonviolent component there that prevents us from saying it's a generic match? I don't think so, Your Honor. Again, going back to Rendon, I mean, if Rendon's test is a finding of jury unanimity, then clearly in this case, with respect to Mr. Simmons, the jury would have to have been unanimous that he escaped from the back of a police car after being placed under arrest by an officer. Now, that being the case, the court would then be able to consider that. There was no judicial fact-finding here. I mean, the judge clearly confined himself to those set of materials under the modified categorical group that he was allowed to consider. One of those being the plea colloquy of the defendant. But that's only if there's been a determination that this statute is capable of being subjected to the modified categorical analysis, and that's where this camps in Rendon kind of put a roadblock in your way. Well, that's what the defense argues. I mean, clearly they've conceded that on at least one level the statute is divisible. Right. And I think that's really the issue is how divisible is a statute? How far do you get to mine down into the case? And if Rendon's test is a required finding of jury unanimity, then I think that answers the question. Because in this case, the jury had to have been, or the jury would have to have found unanimously, that that was the way in which the statute was convicted. The defendant, that was the way, the conduct, which the defendant committed. All right. Thank you, counsel. You've exceeded your time. Any other questions? All right. Rebuttal. Thank you. Well, I think it's understandable, but I think the government really wishes it could hold on to the court's prior precedent, which has been abrogated by this camps. I mean, the one thing that can't be done is to use the documents that are permissible to be used in the modified categorical analysis to figure out what is it that this defendant actually did, and then decide whether that meets the test of James. In response to opposing counsel's argument that if this case had gone to trial, a jury would have been compelled to conclude that he escaped from a police vehicle in order to convict him. My response is that doesn't matter because the element of custody, which is a part of however you're going to divide this crime, is overbroad and sweeps within it generic, nonviolent, passive conduct, and that makes the offense, whether it's divided the way we say it's divided or divided by the way the government says it's divided, or you could divide it even further because if you go to the Hawaii Revised Statutes, you could take the definition of public serving, which has about four subparts, and you could divide the statute in more subdivisions than even Mr. Liu is contending for. But none of those get rid of the problem that is caused by the fact that custody is always part of it, and custody, it sweeps within it conduct that would not meet the test of chambers. And in fact, Judge Clifton's hypothetical isn't actually that far from the truth because here's an actual situation. The defendant is arrested in a violent bank robbery and begins cooperating with the HPD. They have him in protective custody at the police station in a windowless room, and because he's cooperating and they feel okay about him, and they take him out for exercise once in a while. Well, they're doing their exercise because this is the Specialized Services Division, the so-called SWAT unit in other cities. And so they're at Alamanta Park, and they're doing their workout, and he's there, and he could have walked away or not come back because they're running around the park, and he's not a big runner, so they just tell him, hey, be here when we get back. And that would have been a passive escape from custody pursuant to arrest that would not meet the test of chambers. And, you know, it's not in this record, but, I mean, it actually happened, so I think that your hypothetical, Your Honor, is not that far-fetched. The custody element, as defined by the Hawaii Supreme Court in Smith, is what wins this case for Mr. Simmons, in my opinion. All right. Thank you, counsel. Thank you to both counsels. The case just argued is submitted for decision by the court.
judges: Tashima, Rawlinson, Clifton